703 So.2d 1229 (1998)
Kelly J. BARTOLOTTA, Appellant,
v.
Joseph BARTOLOTTA, Appellee.
No. 97-1705.
District Court of Appeal of Florida, Fourth District.
January 7, 1998.
Kayo E. Morgan, Fort Lauderdale, for appellant.
Christopher L. Smith and Richard H. McDuff of Johnson, Anselmo, Murdoch, Burke & George, P.A., Fort Lauderdale, for appellee.
FARMER, Judge.
This is the third appearance of this case involving the custody of children. The reader should refer to our previous opinions in Bartolotta v. Bartolotta, 687 So.2d 1385 (Fla. 4th DCA), rev. denied, 697 So.2d 509 (Fla. 1997), and In the Interest of H.B., 627 So.2d 1331 (Fla. 4th DCA 1993). As in those two previous cases, once again we must reverse the trial court.
The facts setting the stage for the present appeal are unusual to say the least. The parties were divorced in 1989. In an agreement approved by the final judgment, the parties agreed as follows:
"The primary physical residence of the minor children shall be with the Wife, subject to the right and responsibility of the Husband to have open, liberal, visitation with the minor children."
In short there was no restriction in the final judgment on relocation of the custodial parent.
In 1991, HRS removed the children from the mother's care, upon a report alleging child abuse by a former boyfriend, and initiated dependency proceedings. Meanwhile the children's father also brought a modification action seeking a permanent change of custody. These actions were tried together. The trial judge fully exonerated the mother but nevertheless granted the change in custody. We reversed, upon a holding that she had not been shown to be an unfit parent, and the mere fact that the charges had been brought were insufficient to modify custody. 627 So.2d at 1332.
In spite of our decision, the children were still not returned to her. Instead, the father renewed his petition to modify custody, which the trial court again granted. We reversed once again, holding that the father had neither alleged nor proved a substantial change in circumstances warranting a change in custody. We also specifically instructed the trial judge "to immediately return the children to the Mother's custody as primary custodial parent in accordance with the original custody order and our previous mandate." 687 So.2d at 1387-88.
Upon remand, Judge Korda refused to order the children returned to the mother. We thereupon entered an order commanding compliance with our mandate, whereupon he recused himself. Judge Lynch then enforced *1230 our order. Shortly after that, the father filed the latest attempt at modification in which he alleged that the mother had improperly relocated the children to Ohio without prior permission of the court. It appears that she actually moved to Ohio several years ago, and that the practical effect of our ordering the return of the children to her was that they now reside with her outside of Florida. In any event, the father also alleged that one of the children has been diagnosed as suffering from a bi-polar or manic depressive disorder. He now sought an "emergency" order "restoring the status quo" by having the children returned to Florida with a new requirement that the mother not be permitted to take the children out of state unless the court expressly approves such a relocation. The trial judge has granted both aspects of that emergency motion. The present appeal is from that order.
We again observe that the final judgment was silent on the subject of relocation of the children by the custodial parent. In other words, the custodial parent was not prohibited by the final judgmentnor, for that matter, by the parties' own agreementfrom relocating with the children. The father suggests support for the present order in Petrullo v. Petrullo, 604 So.2d 536 (Fla. 4th DCA 1992). In that case, we held that it was "inherent in the final judgment that the child could not be removed from Florida to take up residence in Colorado because of the detailed visitation provisions [in the final judgment]." [emphasis supplied] 604 So.2d at 538.
We do not find Petrullo apposite because the present final judgment lacks any of Petrullo `s detailed visitation provisions. Instead it merely provides generally that the father would have "open, liberal" visitation. That is a shifting provision, and could well apply even when the visiting parent resides far away in another state.
Our decision in Petrullo also predates the supreme court's holdings in Mize v. Mize, 621 So.2d 417 (Fla.1993), and Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996). In those cases the court had adopted a policy allowing good faith relocations by the custodial spouse, and requests for approval of relocation should thus ordinarily be granted.[1] Several courts have held that a relocation by the custodial parent without prior approval of the court is not per se improper where the final judgment does not prohibit such relocation. Wilson v. Roseberry, 669 So.2d 1152 (Fla. 5th DCA 1996) (mother's relocation was not per se improper because the parties' dissolution judgment did not prohibit the mother from relocating with the children); Fabre v. Levine, 618 So.2d 317 (Fla. 1st DCA), rev. denied, 629 So.2d 132 (Fla.1993) (no restriction on change in residence unless restriction is contained in final judgment of dissolution); and cf. Hayes v. Hayes, 578 So.2d 54 (Fla. 2d DCA 1991) (where final judgment of dissolution does not restrict residence of minor child, mere assertion without more that custodial parent intends to move to foreign state not substantial change in circumstances supporting change of custody); Zugda v. Gomez, 553 So.2d 1295 (Fla. 3d *1231 DCA 1989) (in absence of compelling circumstances custodial parent's move to foreign state not a substantial change of circumstances supporting change of custody).
Because there was no provision in the final judgment awarding custody to this mother requiring that she not relocate outside the state unless the court so approves, the real issue presented by the father's modification attempt was whether the mother's relocation to Ohio before her children were restored to her requires that the children's lives be once again unsettled by compelling their return to Florida and prior approval for something that the law had presumptively approved anyway.
We think not. Under the unique facts and circumstances of this case, we think the trial judge abused his discretion in granting the father's motion. Consequently we reverse the order requiring the return of the children to Florida, as well as the modification requiring that she obtain prior court approval for any relocation of the children.
Because of the litigation history of this case, we take the time to add the following observations about further proceedings in the trial court upon our mandate in this case. The relocation without prior court approval is now a moot point under today's decision. That means that modification of custody is now possible only upon a showing by the father of a substantial change in circumstances not encompassed by previous proceedings. The only matter alleged in the father's latest petition arguably meeting that qualification is the alleged diagnosis of one of the children as having the bi-polar disorder. We express no opinion as to whether that is legally sufficient for an evidentiary hearing on the modification attempt.
We do note, however, that the children are now residents of Ohio, and the father is entitled to "open, liberal" visitation under the final judgment. If the parties themselves are unable to agree on his visitation with his children, then a court will have to do so. It is possible that the state where they now reside may assert jurisdiction over disputes as to custody or visitation, but we express no opinion on any such assertions of jurisdiction and merely point out that Florida as the rendering state of the current custody/visitation decree and the home of the noncustodial parent currently has jurisdiction.
REVERSED.
POLEN, J., concurs.
GROSS, J., dissents with opinion.
GROSS, Judge, dissenting.
I believe that the temporary order was within the discretion of the trial court. Relocation was a factor not at issue in the prior cases in this court. Nor has the trial court had a chance to evaluate conditions in Ohio as they compare to the children's life in Florida. In the appropriate case, relocation can be a change of circumstances supporting a change of custody.
In any event, the precedential value of this case is limited, because of its difficult history and the passage of the 1997 statute establishing no presumption in a relocation scenario where a proposed move "will materially affect the current schedule of contact and access with the secondary residential parent." Where the statute applies, a trial court should have broad discretion regarding the entry of a temporary order preserving the status quo. To routinely allow relocation before it could be fully evaluated under the statutory criteria would generally favor the party seeking the move, since by the time of final hearing, the argument will be that the children have become accustomed to their new surroundings and it would be disruptive to uproot them once again.
NOTES
[1] In the 1997 session, the Legislature adopted a new provision that effectively overrules Mize and Russenberger. See Ch. 97-242, Laws of Fla. The new statute became effective July 1, 1997or after the proceedings we review today. In the new statute, the legislature has provided that:

"No presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact and access with the secondary residential parent. In making a determination as to whether the primary residential parent may relocate with a child, the court must consider the following factors:
1. Whether the move would be likely to improve the general quality of life for both the residential parent and the child.
2. The extent to which visitation rights have been allowed and exercised.
3. Whether the primary residential parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent.
5. Whether the cost of transportation is financially affordable by one or both parties.
6. Whether the move is in the best interests of the child."
Although there is no longer any presumption favoring relocation, the burden of proof as to whether a relocation meets the statutory criteria is not addressed by the statute. We also note that the new statute does not appear to require nonrelocation provisions in custody judgments.