736 So.2d 103 (1999)
Debra Ann SULLIVAN, Appellant,
v.
Michael Robert SULLIVAN, Appellee.
No. 97-3625.
District Court of Appeal of Florida, Fourth District.
June 23, 1999.
*104 Sylvan B. Burdick of the Law Office of Burdick, P.A., West Palm Beach, for appellant.
Bard D. Rockenbach of the Law Office of Sellars, Marion & Bachi, P.A., West Palm Beach, for appellee.
BAILEY, JENNIFER D., Associate Judge.
Debra Sullivan, former wife, appeals from an order granting a modification of final judgment transferring custody of the parties' daughter to the former husband. We affirm the trial court's ruling.
Wife appears to concede her poor moral judgment, frequent moves connected with dysfunctional and abusive relationships, and prescription drug use resulting in hospitalization, all to which the child was exposed; but argues that the child has manifested no ill effects and that therefore this ruling amounts to passage of a moral judgment against her.
The trial court found that the wife had a serious problem managing prescription medications which interfered with her ability to parent her daughter. The record included the testimony of the wife's family members and roommate. They described suicide attempts, illnesses, and behavioral instability while taking prescriptions during deep depressions over relationship breakups. Wife's condition prevented her from caring for her child. For example, she forgot to give her daughter needed medications for flea bites, head lice, and other conditions. The child manifested physical symptoms of neglect due to lack of treatment for these conditions. For extended times, wife took pain killers and slept while the child was cared for by her grandmother, her aunt, or her father.
Wife made the unilateral decision to move the child with her to Georgia[1] and *105 away from her extended family, friends and home in Palm Beach. Relatives testified that during her time in Georgia, the child's personality changed from bubbly and extroverted to distant, reserved, shy, and upset.
A petitioning parent must overcome an extraordinary burden to receive a post-judgment custody modification. Bartolotta v. Bartolotta, 687 So.2d 1385 (Fla. 4th DCA 1997). A trial court has far less discretion in modifying a custody order than it enjoys in making an original determination. The husband had to prove that circumstances had substantially and materially changed since the final judgment and that a change of custody would promote the best interests of the child. Id. at 1386.
Poor moral choices are insufficient grounds to modify custody, absent some impact on the child. Dinkel v. Dinkel, 322 So.2d 22 (Fla.1975); Jablon v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991). Frequent moves, a less stable lifestyle, even poor relationship choices standing alone may not support a custody modification where the residential parent has moved out of necessity, has subsequently established a stable home, and the child's needs have always been met. See Jablon v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991); Kelly v. Kelly, 642 So.2d 800 (Fla. 2d DCA 1994). In this case the wife filed a motion to permanently relocate the child to her boyfriend's home in Georgia. She finally withdrew it the morning of trial. The mother remained unsettled, however, without a permanent home, and showed no signs of recognizing or resolving her problems, including the issues of depression and prescription drug use which interfered with her ability to meet her daughter's needs. The record confirms a significant deterioration of parenting skills post-judgment, which established a substantial change of circumstances, and that the child's best interests would be promoted by living with her father. Bartolotta, 687 So.2d 1385.
The wife further argues that the time allowed to present her case was improperly limited by the trial court. Her counsel had estimated it would take two days, and husband's counsel one day. At the commencement of trial, the trial court announced it had a day and a half and that the time would be equally split between the parties' presentations. During the trial, the court periodically advised counsel how they were managing their time. Wife's counsel used much of his time on cross examination in the husband's case. As a result, he had very limited time to present the wife's defense to the motion. The custody investigator and the wife testified; however, time ran out before the wife's father testified. At no time did wife's counsel proffer the testimony he would have procured from the father had additional time been made available.
The failure to proffer the testimony sought is fatal to wife's argument. The issue was not preserved for appeal. Stager v. Florida E. Coast Ry. Co., 163 So.2d 15 (Fla. 3d DCA 1964); Ketterson v. Estate of Bruns, 711 So.2d 613 (Fla. 4th DCA 1998). Absent a proffer of the testimony, it is impossible to gauge the value of the testimony and whether the court improperly restricted the wife's full and fair presentation of her case. See Antoniak v. Antoniak, 652 So.2d 943 (Fla. 5th DCA 1995); Stager, 163 So.2d at 17.
The trial court has authority under section 90.612, Florida Statutes (1997), to efficiently manage trial proceedings, including "avoiding the needless consumption of time." While pre-established time limits must flex with circumstances, the time of a trial judge is not an infinitely elastic commodity. There are other cases waiting to be heard. A full and fair hearing does not require a trial court to allow unlimited time. Imposing fair and predetermined time limits does not, standing alone, deprive a party of due process of law. Ketterson v. Estate of Bruns, 711 So.2d 613 (Fla. 4th DCA 1998). Given the heavy obligations of trial courts to manage *106 judicial resources efficiently, the trial court's procedure in this case was responsible and appropriate.[2]
We affirm.
KLEIN and GROSS, JJ., concur.
NOTES
[1] The move was in order to pursue a romantic relationship. Ms. Sullivan had previously moved in and broken up with several men, resulting in multiple moves for the child.
[2] We are aware of the practice of underestimating time in anticipation of an earlier setting and in the hope that the trial court will somehow accommodate cases which run over. Lawyers "lowball" time requests at their peril. Also, we are aware of parties taking excessive time during trials to require resetting the matter, and thus delaying a ruling by the trial court. This is also perilous.